**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEANNA SCARBO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WISDOM FINANCIAL, d/b/a East Coast | : | |
| Funding Group, Inc., TRANSUNION, | : | |
| EXPERIAN and EQUIFAX, CREDIT ONE | : | |
| BANK, LVNV FUNDING LLC, d/b/a | : | |
| Resurgent Capital Services, MAJOR | : | |
| FINANCIAL CORPORATION, CAPITAL | : | |
| BANK NA and U.S. DEPT OF | : | |
| EDUCATION, d/b/a GLEL | : | NO. 20-5355 |

**<u>MEMORANDUM OPINION</u>**

Savage, J.                                              February 2, 2022

In this Fair Credit Reporting Act action, plaintiff Deanna Scarbo claims she was denied three loans on the basis of inaccurate information furnished by the defendants Wisdom Financial, LVNV Funding LLC, and Great Lakes Educational Loan Services, Inc.[1] to consumer reporting agencies, even after she disputed the reports.[2]  All three move for summary judgment, contending that the undisputed facts prove that they reported accurate information and reasonably investigated her disputes.

It is undisputed that Wisdom Financial published factually inaccurate credit information regarding Scarbo.  There is evidence from which a reasonable jury could find that Wisdom failed to conduct a reasonable investigation after Scarbo disputed it.  Thus, we shall deny Wisdom's motion for summary judgment.

---

[1] Scarbo improperly identified the defendant Great Lakes as the U.S. Dep't of Education d/b/a GLEL.  The proper defendant is Great Lakes Educational Loan Services, Inc.

[2] Scarbo also sued three consumer reporting agencies and three other furnishers of credit information. They are not implicated in the motions before us.

On the other hand, the undisputed facts show that the information defendants LVNV and Great Lakes furnished was either accurate or immaterial.  Hence, we shall grant their motions for summary judgment.

## Background

Scarbo was denied two K–12 educational loans and a mortgage.[3]  After reviewing her credit reports, she disputed three tradelines: her credit card debt with LVNV Funding, Inc.;[4] her student loans with Great Lakes Educational Loan Services, Inc.;[5] and her auto loan with Wisdom Financial.[6]  In response, LVNV made minor changes to its tradeline. Great Lakes and Wisdom determined no changes were necessary.  Dissatisfied with these responses, Scarbo initiated this lawsuit.

### *LVNV Disputes*

Scarbo opened a credit card account with Credit One Bank in April 2019.[7]  By July, she had defaulted.[8] Six months later, Credit One "charged off" the account.[9]

---

[3] Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J. Ex. 11 (ECF No. 105-12) (NBT Bank Denial Letter); Ex. 17 (ECF No. 105-18) (Sallie Mae Denial Letter); Ex. 18 (ECF No. 105-19) (OneWest Bank Denial Letter).

[4] Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. Ex. P-3 (ECF No. 111-3) (LVNV/Experian Dispute Letter).

[5] Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J. Ex. 7 (ECF No. 105-8) (GLEL/Experian Dispute Letter); Ex. 8 (ECF No. 105-9) (GLEL/Trans Union Dispute Letter).

[6] Wisdom Fin.'s Mot. Summ. J. Ex. A, ¶ 22 (ECF No. 110-3) (Decl. of Christopher Reilly); Wisdom Fin.'s Mot. Summ. J., Ex. C (ECF No. 110-5) (Wisdom/Experian & Wisdom/Trans Union Credit Reports).

[7] LVNV Funding, Inc.'s Statement of Uncontested Material Facts ¶ 2 (ECF No. 102-1); LVNV Funding, Inc.'s Mot. Summ. J., Ex. A, Vol. 1, 69:6–21, Vol. 2, 71:13–21 (ECF No. 102-2) (LVNV's Dep. of Deanna Scarbo).

[8] LVNV Funding, Inc.'s Mot. Summ. J. Ex. 2 to Ex. B (ECF No. 102-3) (Credit One Bank Statements); *see* LVNV Funding, Inc.'s Statement of Uncontested Material Facts ¶ 2; LVNV's Dep. of Deanna Scarbo at Vol. 1, 69:6–18, Vol. 2, 71:13–21.

[9] LVNV Funding, Inc.'s Statement of Uncontested Material Facts ¶¶ 2-3; LVNV Funding, Inc.'s Mot. Summ. J., Ex. B ¶ 9 (ECF No. 102-3) (Aff. of Kimberly Hannigan); Credit One Bank Statements.

On February 18 or 21, 2020, LVNV Funding, Inc. acquired Scarbo's account.[10] LVNV placed Scarbo's account with Resurgent Capital Services L.P. for servicing.[11] Resurgent mailed a letter to Scarbo on February 24, 2020, informing her that "effective 02/21/2020 LVNV Funding LLC ha[d] placed [her] account with Resurgent Capital Services L.P. for servicing."[12] The letter stated her balance as $625.82.[13] LVNV reported Scarbo's Credit One debt of $625 to consumer reporting agencies beginning on May 11, 2020.[14]

Later that year, after NBT Bank denied her credit,[15] Scarbo disputed LVNV's reporting of her debt with Experian.[16] Scarbo complained about the accuracy of general information associated with her account. Specifically, Scarbo alleged the following defects: (1) "[a]ccount number is incomplete and unidentifiable," (2) "[a]ccount status not listed," (3) "[d]ate opened inaccurate [and] [c]ontradicts 'status update,'" (4) "[o]riginal balance is inaccurate," (5) "[p]ayment history is incomplete," (6) "[m]onthly payment

---

[10] Aff. of Kimberly Hannigan ¶¶ 5–9; Credit One Bank Statements.

Scarbo alleges it is unclear when the acquisition actually occurred.  Scarbo maintains that a letter she received from Resurgent Capital says LVNV bought the debt on February 21, contradicting credit reports which show a February 18 opening date.  *Compare* Aff. of Kimberly Hannigan ¶ 5 (stating purchase was on February 18th) *with* Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 7, 10 (ECF No. 111) (citing Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J., Ex. P-1 (ECF No. 111-1) (Resurgent Letter)) (arguing purchase date is "unclear" and may have been February 21st).  This three-day difference is immaterial.

[11]  *See* Resurgent Letter (stating placement date as February 21).  *But see* Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 10 (alleging actual placement date is unclear).

[12] Resurgent Letter.

[13] *Id*.

[14] LVNV Funding, Inc.'s Mot. Summ. J., Ex. 4 to Ex. B (ECF No. 102-3).

[15] *See* NBT Bank Denial Letter.

[16] LVNV/Experian Dispute Letter.

amount not listed," (7) "[p]ast due amount not listed," and (8) "[h]ighest [b]alance not listed."[17]

On July 20, 2020, Resurgent received notice of Scarbo's dispute from Experian.[18] Nine days later, Resurgent concluded its investigation and changed several entries on its reports to the credit bureaus.[19]  It corrected the spelling of Scarbo's name, updated her street address, changed the "high credit/original amount" field from $625 to $0, and added a notation stating that the account was disputed.[20]

While the Experian dispute was under investigation, Scarbo disputed the same LVNV tradeline with Trans Union.[21] On July 13, 2020, she sent a letter to Trans Union identifying the same inaccuracies.[22]  Resurgent investigated the dispute.[23] In response, it updated Scarbo's address, changed the "high credit/original amount" field from $625 to $0, and added a notation stating that the account was disputed.[24]  Scarbo maintains

---

[17] *Id.*

[18] Aff. of Kimberly Hannigan ¶ 11; Ex. 3 to Ex. B (ECF No. 102-3) (Resurgent/Experian Automated Consumer Dispute Verification Form).

[19] *See* Resurgent/Experian Automated Consumer Dispute Verification Form.

[20] *Id.* Neither Scarbo nor LVNV have explained if or how the July 2020 alteration to the "high credit/original amount" field is relevant to this case.

[21] LVNV/Experian Dispute Letter.

[22] *Id.*

[23] LVNV Funding, Inc.'s Mot. Summ. J., Ex. 5 to Ex. B (ECF No. 102-3).

[24] *Id.*

LVNV is still inaccurately reporting her balance,[25] her debt-to-credit ratio,[26] and the opening date of the credit line.[27]

*Great Lakes Dispute*

In December 2012, Scarbo obtained a college loan from the United States Department of Education.[28] Between 2012 and 2020, she took out additional federal student loans. As of February 2021, she had an unpaid principal balance of $53,982.73.[29] Her student loans are serviced by Great Lakes Educational Loan Services, Inc.[30] Scarbo made no payments on her student loans because she received in-school deferments and forbearances.[31] Accordingly, Great Lakes reported to the credit bureaus that Scarbo's account was "in good standing."[32]

After Scarbo was first denied credit in June 2020, she disputed Great Lakes' reporting of her student loan debt.[33]  Scarbo claimed her Experian credit report was inaccurate for the following reasons: (1) "[a]ccount number is incomplete and unidentifiable," (2) "[o]riginal creditor is not listed/identifiable—incomplete," (3) "[a]ccount

---

[25] *See* Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 8.

[26] *Id.* at 7.

[27] *Id.* at 8; *see* Resurgent Letter.

[28] *See* Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J., Ex. 1 (ECF No. 105-2) (Master Promissory Note); Sallie Mae Denial Letter.

[29] *Id.*; *see* Great Lakes Educ. Loan Servs., Inc.'s Reply Br. Amended Ex. A (ECF No. 127-1).

[30] Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J., Ex. 2 at 112:7-11 (ECF No. 105-3) (GLEL's Dep. of Deanna Scarbo).

[31] *Id.* at 113:14–114:20.

[32] *See* Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J., Ex. 5 (ECF No. 105-6) (GLEL/Experian Credit Report); Ex. 6 (ECF No. 105-7) (GLEL/Trans Union Credit Report).

[33] GLEL/Experian Dispute Letter; GLEL/Trans Union Dispute Letter.

status is inaccurate," (4) "[o]riginal balance is inaccurate," (5) "Payment history is incomplete.  If account was opened in 2012 then the payment history should reflect such claim." (6) "[m]onthly payment amount not listed—incomplete," (7) "[p]ast due amount not listed—incomplete," (8) "[h]ighest [b]alance not listed—incomplete," and (9) "[t]erms are inaccurate."[34]

Great Lakes investigated the information and determined it was accurate.[35]  It continued reporting Scarbo's account as deferred and in good standing.[36] Scarbo maintains the tradeline is inaccurate because her "original balance" was reported incorrectly, some months have payment information reported as "no data" or "unknown," the first digits of her account number appear as "x's" on her credit report, her debt-to-credit ratio is incorrect, and Great Lakes failed to inform the consumer reporting agencies that her account was disputed.

*Wisdom Disputes*

Scarbo purchased a Chevrolet Tahoe in October 2013 and financed it through defendant Wisdom.[37]  About two years later, Wisdom repossessed the vehicle[38] after she defaulted.[39]  At that time, Scarbo owed $14,278.20.[40]  Wisdom sold the vehicle for

---

[34] GLEL/Experian Dispute Letter. Scarbo's dispute with Trans Union cited similar inaccuracies, but omitted the claims related to her "account status," "monthly payment amount," and "past due amount." GLEL/Trans Union Dispute.

[35] Aug. 8, 2021 Letter re: Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J, Ex. A, ¶¶ 12–13 (ECF No. 106-1) (Decl. of Michelle Windy).

[36] GLEL/Experian Dispute Letter; GLEL/Trans Union Dispute Letter.

[37] Wisdom Fin.'s Mot. Summ. J., Ex. 1 to Ex. A (ECF No. 110-3).

[38] Pl.'s Resp. in Opp'n to Wisdom Fin.'s Mot. Summ. J., Ex. B.2 (ECF No. 117-1).

[39] *Id.*

[40] Decl. of Christopher Reilly at ¶ 17; *see also* Wisdom Fin.'s Mot. Summ. J. at 7 (ECF No. 110-1).

$12,394.[41] After deducting that amount and adding towing and storage fees, Scarbo's debt was reduced to $2,374.20.[42] Wisdom reported to Experian and Trans Union that her balance was $15,068.[43]

When NBT Bank denied Scarbo a K–12 educational loan in June 2020, it relied on an Experian credit report[44] showing the Wisdom balance as $15,068.[45] Scarbo used an online form maintained by several major credit bureaus to dispute the Wisdom tradeline, alleging her balance was inaccurate.[46]

Shortly after receiving the dispute, Wisdom "pulled up [Scarbo]'s account information" and discovered that "a box in its internal system showed a total balance of $2,374.20."[47] Wisdom then "cross-referenced this total amount with the data associated with Plaintiff's account and confirmed [$2,374.20] was the correct balance."[48] Nonetheless, Wisdom continued to report a balance of $15,068.[49]

---

[41] Wisdom Fin.'s Mot. Summ. J. at 7 (ECF No. 110-1); Decl. of Christopher Reilly at ¶¶ 17–21; Wisdom Fin.'s Mot. Summ. J., Ex. 2 to Ex. A (ECF No. 110-3) (Tahoe Loan History).

[42] Decl. of Christopher Reilly at ¶ 19; Tahoe Loan History at 2; *see* Wisdom Fin.'s Mot. Summ. J., Ex. 3 to Ex. A (ECF No. 110-3); Wisdom Fin.'s Mot. Summ. J. at 7.

[43] Decl. of Christopher Reilly at ¶¶ 37–38; *see* Wisdom/Experian & Wisdom/Trans Union Credit Reports at 4, 9 (showing $15,068 balance).

[44] NBT Bank Denial Letter.

[45] *See* Wisdom/Experian & Wisdom/Trans Union Credit Reports at 4, 9.

[46] Decl. of Christopher Reilly at ¶ 22; *see also* Pl.'s Resp. in Opp'n to Wisdom Fin.'s Mot. Summ. J. at 2 (ECF No. 117).

[47] Decl. of Christopher Reilly at ¶¶ 23–24.

[48] *Id.* at ¶ 25.

[49] *Id.* at ¶¶ 37–38; Wisdom/Experian & Wisdom/Trans Union Credit Reports at 4, 9.

After Wisdom's first investigation, Scarbo called Wisdom and spoke to Christopher Reilly, Vice President of Collections.[50] Reilly told Scarbo that Wisdom would correct her balance.[51] The next day, he confirmed it was $2,374.20.[52]

In August and October 2020, following her discussions with Reilly, Scarbo was denied a mortgage[53] and another K–12 educational loan[54] based on her Trans Union and Equifax credit reports. She then filed this suit, claiming that Wisdom had failed to investigate her disputes and was still reporting her balance inaccurately.[55] She also sent a second dispute to Wisdom.[56]

After Scarbo filed suit, Reilly re-investigated her claims.[57] Cross-referencing internal data sources, he again determined the correct balance was $2,374.20.[58] During this second investigation, Reilly "recognized that while the correct balance of $2,374.20 was listed on the screen, there was not a 'check' in the box next to that data which was needed to transmit the data to the credit bureaus."[59] This accounted for Wisdom's

---

[50] Decl. of Christopher Reilly at ¶¶ 28–29.

[51] *Id*.

[52] *Id*. at ¶ 32; *see* Pl.'s Resp. in Opp'n to Wisdom Fin.'s Mot. Summ. J., Ex. B (ECF No. 117-1).

[53] OneWest Bank Denial Letter.

[54] Sallie Mae Denial Letter.

[55] *See* Compl. (ECF No. 1-2).

[56] Decl. of Christopher Reilly at ¶ 34; *see* Pl.'s Resp. in Opp'n to Wisdom Fin.'s Mot. Summ. J., Ex. B.1 (ECF No. 117-1).

[57] Decl. of Christopher Reilly at ¶¶ 36–37.

[58] *Id*.

[59] *Id*. at ¶ 37.

furnishing an incorrect balance of $15,068 since October 2015.[60]  Reilly corrected the error "immediately" by simply "'check[ing]' the box to update the information."[61]

### Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party.  FED. R. CIV. P. 56(a).  Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The nonmovant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations, or suspicions are not sufficient to defeat summary judgment.  *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003) (citation

---

[60] *See* Wisdom/Experian & Wisdom/Trans Union Credit Reports at 4, 9.

[61] Decl. of Christopher Reilly at ¶¶ 38–39.

omitted).   Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted).  Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury.  *Anderson*, 477 U.S. at 255.

### Analysis

Furnishers of credit information to consumer reporting agencies cannot be sued by a consumer for reporting inaccurate information.  They can only be sued for failing to conduct a reasonable investigation of a dispute regarding the accuracy of information furnished to and reported by a consumer reporting agency.

Creditors have a duty to provide accurate information to consumer reporting agencies.  15 U.S.C. § 1681s-(2)a; *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).  A creditor may not furnish information that it knows or has reason to know is inaccurate.  15 U.S.C. § 1681s-2(a)(1)(A).  Enforcement of this provision lies exclusively with certain federal and state officials.   15 U.S.C. §1681s-2(d).  Thus, a consumer cannot bring a private action against a creditor for furnishing inaccurate information under § 1681s-2(a).

Furnishers may be liable to a consumer for failing to conduct a reasonable investigation of the consumer's bona fide dispute regarding the accuracy of the information furnished. 15 U.S.C. §§ 1681i(a)(2), 1681s-2(b); *see SimmsParris*, 652 F.3d at 358. Section 1681s-2(b) prescribes a furnisher's duty to investigate the accuracy of information supplied to a consumer reporting agency once it is disputed.  It provides:

(1) After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

    (A)   conduct an investigation with respect to the disputed information;

    (B)   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C)   report the results of the investigation to the consumer reporting agency;

    (D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    (E)   if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

        (i)      modify that item of information;

        (ii)     delete that item of information; or

        (iii)    permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

A furnisher has a duty to investigate a consumer's dispute and to report the results to the consumer reporting agency. If a furnisher fails to conduct a reasonable investigation in conformity with § 1681s-2(b), the consumer may sue the furnisher for damages caused by the reporting of inaccurate or incomplete information. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014); 15 U.S.C. §§ 1681n, 1681o.

As a threshold matter, the consumer must establish that the furnished information is inaccurate. *Ostrander v. Trans Union LLC*, No.20-5227, 2021 WL 3271168, at *11

(E.D. Pa., July 30, 2021) (quoting *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 608 n.9 (E.D. Pa. 2008)).  Absent an inaccuracy, the consumer cannot "satisfy the statutory requirement of actual damages" or "Article III's requirement of actual damages or concrete harm."[62]  *Ostrander*, 2021 WL 3271168, at *11 (citation omitted); *see also Pittman v. Experian Info.  Sols. Inc.*, 901 F.3d 619, 629 (6th Cir. 2018); *Holland v. Trans Union LLC*, No. 21-152, 2021 WL 5804375, at *7 (E.D. Pa. 2021) ("§ 1681s-2 would be nonsensical if a plaintiff could make a claim against a furnisher that it failed to investigate accurate information.").  If the information is accurate, the creditors cannot be liable for their failure to investigate or for an inadequate investigation. *See Holland*, 2021 WL 5804375, at *7. Thus, Scarbo must prove that the information her creditors furnished was inaccurate.

Under the FCRA, information is inaccurate not only if it is factually incorrect, but if it is misleading.  *Seamans*, 744 F.3d at 865.  Literally correct information may be inaccurate if it "create[s] a misleading impression."  *Id.* (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) (alteration in original)); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x. 896, 902 (3d Cir. 2011).  The information must be so misleading that it "can be expected to have an adverse effect.'" *Seamans*, 744 F.3d at 865 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)).  Accuracy is viewed from the perspective of a reasonable creditor

---

[62] *See Spokeo Inc. v. Robins,* 578 U.S. 330, 342 (2016) ("[A consumer] cannot satisfy the demands of Article III by alleging a bare procedural violation.  A violation of one of the FCRA's procedural requirements may result in no harm."); *Gagliardi v. Equifax Info. Servs. LLC,* No. 09-1612, 2011 WL 337331, at *12 n.14 (W.D. Pa. Feb. 3, 2011) ("A plaintiff cannot obtain an award of 'actual damages' under the FCRA without establishing a causal relationship between a statutory violation and the harm for which redress is sought") (first citing 15 U.S.C. § 1681n(a)(2); then citing *Rambarran v. Bank of Am., N.A.,* 609 F. Supp. 3d 1253, 1270 (S.D. Fla. 2009); and then citing *Scheel-Baggs v. Bank of Am.,* 575 F. Supp. 2d 1031, 1043 (W.D. Wis. 2008)).

who would rely on the information for the purpose of deciding whether to extend credit to the plaintiff. *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 575, 577 (E.D. Pa. 2021) (citing *Hernandez v. Trans Union LLC*, No. 19-1987, 2020 WL 8368221, at *3 (N.D. Fla., Dec. 10, 2020)).

*LVNV*

Scarbo claims that before LVNV purchased her debt from Credit One Bank, she enrolled in a credit protection program offered by Credit One. According to Scarbo, the credit protection program entitled her to benefits in case of illness or unemployment.[63] She alleges Credit One should have applied these benefits to reduce her balance before charging off her account. She argues LVNV is liable for Credit One's alleged failure to do so. Her Credit One statements include both late fees and charges for a credit protection program.[64] According to Scarbo, because charges for both items appear on the same statements, LVNV should have known that Credit One's records of her balance were inaccurate.[65] LVNV claims it furnished only accurate information and that Scarbo has produced no evidence that she applied for or was entitled to credit protection benefits.[66]

Scarbo has not shown that the balance furnished by LVNV was inaccurate. She testified that she does not recall whether she ever informed Credit One that she qualified

---

[63] Specifically, Scarbo alleges the Credit One program would reduce her minimum payment balance and eliminate late fees if she were to "become sick or ill or unemployed or have some kind of casualty." LVNV's Dep. of Deanna Scarbo, Vol. 1, 116:13–18.

[64] *See* Credit One Bank Statements.

[65] *See* Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 8 ("If the benefits [of the payment protection plan] were rightfully applied there would be no late fees assessed.").

[66] Scarbo cannot recall whether she ever informed Credit One of any qualifying event or tried to seek the benefits of the payment protection program. *See* LVNV's Dep. of Deanna Scarbo at Vol. 2, 84:6–85:3.

for the credit protection program.[67] In other words, Scarbo has not shown that she notified Credit One that she was entitled to the program's benefits.[68]

Scarbo also alleges LVNV furnished a factually inaccurate 100% debt-to-credit ratio, resulting in credit denials. Although her debt-to-credit ratio was reported as 100% when it was not, she actually benefited from the error. Her credit reports underreported her debt-to-credit ratio by over half.[69] No reasonable jury could find that LVNV's furnishing of Scarbo's debt-to-credit ratio caused her damages.[70] No potential creditor referenced a debt-to-credit ratio in its denial letters.[71]

Finally, Scarbo alleges that the opening date on her LVNV tradeline is factually incorrect. She contends both credit reports show the opening date of the credit line as February 18, 2020,[72] while a letter she received from Resurgent Capital says LVNV acquired the debt on February 21, 2020.[73] The letter informed Scarbo that "effective 02/21/2020, LVNV Funding LLC ha[d] placed [her] account with Resurgent Capital

---

[67] LVNV's Dep. of Deanna Scarbo at Vol. 2, 84:6–85:3.

[68] Credit One Bank could not have known that Scarbo qualified for credit protection benefits if she never informed the bank of a qualifying event. Scarbo correctly notes that "not recalling an event doesn't mean it didn't happen." Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 12. However, as the plaintiff, Scarbo bears the threshold burden of showing that she *did* qualify for credit protection benefits.

[69] *See* Credit One Bank Statements. Scarbo's credit limit at Credit One was $300. Her balance was $625, meaning her debt-to-credit ratio was actually 625:300, or 208%.

[70] *See Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1367 (N.D. Ga. 2005), *aff'd*, 164 F. App'x 914 (11th Cir. 2006) (awarding no relief because "[a]n accurate credit report . . . would have contained even more damaging adverse information than that which Plaintiff complains"); *Akselrod v. Chex Sys., Inc.*, No. 04-3680, 2005 WL 1492390, at *4 (C.D. Cal. June 6, 2005) ("The only manner in which a recipient of Plaintiff's credit report could have been misled under such circumstances would be to Plaintiff's benefit . . . . This is a novel interpretation to say the least, particularly in light of the FCRA's interest in protecting the consumer from unsupported adverse credit information.").

[71] *See* NBT Bank Denial Letter; Sallie Mae Denial Letter; OneWest Bank Denial Letter.

[72] *See* LVNV/Experian Dispute Letter.

[73] Resurgent Letter.

14

Services for servicing."[74] Scarbo alleges that the different dates mean that one set of documents has to be incorrect.[75]  LVNV counters that the dates describe two different events: the date LVNV acquired the debt from Credit One and the date it placed it for servicing.[76]

The difference in dates establishes only that the "Date Opened" field on her credit report could have been misreported by three days.  The three-day difference had no bearing on the collection status of the account.  It is immaterial.

The undisputed evidence proves that LVNV did not furnish inaccurate or misleading material information to the consumer reporting agencies.  It had no duty to correct Scarbo's disputed immaterial information.  Therefore, we shall grant LVNV's motion for summary judgment.

### Great Lakes

Scarbo claims that the "original balance" field on her credit reports is factually inaccurate because it includes the balance of the total of all her Great Lakes loans, rather than just her first loan.[77] She also claims Great Lakes furnished her debt-to-credit ratio inaccurately.[78]

---

[74] *Id.*

[75] Pl.'s Resp. in Opp'n to LVNV Funding, Inc.'s Mot. Summ. J. at 10.

[76] Aff. of Kimberly Hannigan at ¶ 5; *see also* Great Lakes Educ. Loan Servs., Inc.'s Statement of Uncontested Material Facts ¶ 3 (ECF No. 102-1).

[77] GLEL's Dep. of Deanna Scarbo, Vol. 2 at 117:6–118:5; *see* Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J., 8–9 (ECF No. 105-1).

[78] GLEL's Dep. of Deanna Scarbo, Vol. 2 at 119:20–120:7; *see* Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J. at 8–9.

Great Lakes maintains that all information it furnished was factually correct. It argues the "original balance" field accurately reflects the total original balance of Scarbo's loans as of May 2020, and that, considering her subsequent loan history, reporting only the balance of the first loan issued in 2012 would be inaccurate. As to the allegedly inaccurate debt-to-credit ratio, Great Lakes notes that neither Experian nor Trans Union published a debt-to-credit ratio for the Great Lakes account. In any event, Great Lakes alleges that a greater-than-100% ratio would be correct because some of Scarbo's loans have accrued interest since she initially incurred the debt.

Scarbo bears the burden of producing evidence that Great Lakes furnished factually inaccurate information. Aside from her deposition testimony that she believes her original balance should be calculated based on one loan from 2012,[79] Scarbo has not produced any evidence that Great Lakes inaccurately reported the original balance of her educational loans. Similarly, she has presented no evidence suggesting that Great Lakes ever furnished a debt-to-credit ratio, a debt-to-credit ratio was reported by any consumer reporting agency, or any furnished or reported debt-to-credit ratio was factually inaccurate.

In addition to her claims of factual inaccuracy, Scarbo asserts the Great Lakes tradeline is incomplete and misleading. She contends Great Lakes incorrectly reported several months of her payment history as "no data" or "unknown," and that the first digits of her account number falsely appear as "x's" on her credit reports.[80] Lastly, she argues

---

[79] GLEL's Dep. of Deanna Scarbo, Vol. 2 at 117:24–118:5.

[80] *See* Great Lakes Educ. Loan Servs., Inc.'s Mot. Summ. J.at 8–9.

Great Lakes was required to furnish the consumer reporting agencies with a notice explaining her dispute.[81]

Great Lakes denies furnishing incomplete or misleading information about Scarbo's pay status.  Great Lakes asserts it accurately reported payment data for months when Scarbo's loans were in deferment or forbearance.  It contends it correctly reported these months as "no data" or "unknown" when payments were neither due nor received. During these months, there was no payment status to report.  Great Lakes also claims it did furnish Scarbo's full account number to the consumer reporting agencies.  The agencies, following industry practice, redacted the number on their reports to protect Scarbo's privacy.  Finally, Great Lakes argues it cannot be liable for not marking Scarbo's account as disputed because it contends her dispute was not "potentially meritorious." *See Seamans*, 744 F.3d at 867.

Scarbo cannot meet her burden of establishing Great Lakes furnished misleading or incomplete information relating to her payment data or account number.  As for the payment data, the credit reports at issue show her account status as "in good standing" or "satisfactory."[82] In addition to these positive status markers, both reports indicate no payments were due or made[83] during the deferment periods marked as "no data" or "unknown."[84] The "no data" or "unknown" notations did not create a misleading or

---

[81] *Id.*

[82] *See* GLEL/Experian Credit Report; GLEL/Trans Union Credit Report.

[83] Scarbo has not alleged that she made payments during these periods; even if she had, she has produced no evidence of doing so.

[84] The Experian report notes the "Scheduled Payment Amount" for each month at issue as $0, and Trans Union reports the "Scheduled Payment," "Amount Paid," and "Amount Past Due" fields all as $0. Both reports also indicate Scarbo's payments are deferred until January 2022.

incomplete impression of Scarbo's payment history. Viewing the account's payment history as a whole,[85] which shows that Scarbo's account is "in good standing," "deferred," "paying as agreed," and "never late,"[86] no reasonable creditor would deny Scarbo credit on the basis of the payment data furnished by Great Lakes. Nor would a creditor decline to issue a loan to Scarbo based on the abbreviated Great Lakes account number that appears on her credit reports.

Because Scarbo did not identify any material inaccuracies, Great Lakes had no obligation to mark her account as disputed. Scarbo's filing a non-meritorious dispute did not trigger a duty to mark the tradeline as disputed. *See Seamans*, 744 F.3d at 867 (holding failure to mark an account as disputed violates FCRA only if the dispute is "potentially meritorious"). Therefore, Great Lakes is entitled to summary judgment in its favor.

*Wisdom*

There is no question that Wisdom furnished factually inaccurate information to Trans Union and Experian. Wisdom concedes that the balance on Scarbo's auto loan following its 2015 repossession of her Tahoe was $2,374.20 and that it knew it.[87] Nonetheless, it continued to furnish information to consumer reporting agencies that the balance was $15,068 until January 2021, after Scarbo disputed it a second time.[88]

---

[85] *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020) (noting the court must look at the credit report objectively and not merely "squint" at one portion).

[86] *See* GLEL/Experian Credit Report; GLEL/Trans Union Credit Report.

[87] Decl. of Christopher Reilly at ¶ 21.

[88] *Id.* at ¶¶ 37–38 (admitting Wisdom did not report a $2,374.20 balance to the credit bureaus until January 2021); *see* Wisdom/Experian & Wisdom/Trans Union Credit Reports at 4, 9 (showing $15,068 balance).

Having proven Wisdom reported inaccurate information, Scarbo must show that its investigation into the inaccuracy was unreasonable.  *See Seamans*, 744 F.3d at 864. An investigation is unreasonable if the furnisher does not follow a procedure "that a reasonably prudent person would undertake under the circumstances."  *Id.* (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)).  Whether a furnisher's investigative procedures are reasonable "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."  *Id.* at 864–65 (quoting *Cortez*, 617 F.3d at 709).

Even though Wisdom's records reflected a $2,374 balance, it still reported Scarbo's balance as $15,068.  It blames an employee's failure to check the correct box in the accounting software.[89]  Wisdom argues its investigation was reasonable because it "believed that it was accurately reporting the correct information" and "any discrepancy in reporting was mere human error that was quickly resolved."[90]

The mere fact that Wisdom furnished inaccurate information does not prove that its investigation was unreasonable.  *See Rambarran*, 609 F. Supp. 2d at 1261–62 ("An investigation that yields less-than-perfect results may nevertheless be reasonable given the facts of a particular case.").[91]  Nonetheless, there is ample evidence that a rudimentary investigation would have revealed the inaccuracy.  Indeed, after it was sued,

---

[89] Decl. of Christopher Reilly at ¶¶ 36–37.

[90] Wisdom Fin.'s Mot. Summ. J. at 8, 10.

[91] The purpose of an FCRA dispute is to uncover and correct errors in information furnished to consumer reporting agencies.  An investigation which fails to confirm whether accurate internal records were *actually* furnished—not just *believed to be* furnished—to those agencies cannot be unquestionably reasonable.  *See e.g.*, *Rambarran*, 609 F. Supp. 2d at 1261–62 (finding genuine factual dispute on reasonableness issue because creditor, following investigation, reported account status contrary to its internal records).

Wisdom quickly discovered the error.  A reasonable jury could conclude that a cursory investigation alone would have revealed Wisdom was furnishing an incorrect balance and that its investigation was not reasonable because it failed to detect an easily identifiable error.  Hence, we shall deny Wisdom's motion for summary judgment.

## Conclusion

A reasonable jury could conclude that Wisdom's investigation into Scarbo's inaccurately reported information was unreasonable.  As to LVNV and Great Lakes, Scarbo has failed to establish that the information furnished was either factually inaccurate, misleading, or material.  Therefore, we shall grant LVNV and Great Lakes' motions for summary judgment, and deny Wisdom's motion for summary judgment.